# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| KENNETH TALTON,<br><br>*Plaintiff*,<br><br>v.<br><br>TERRY DEESE, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>5:18-cv-00432-TES |

## ORDER GRANTING DEFENDANT
## DEESE'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Sheriff Terry Deese's Motion for Summary Judgment [Doc. 18]. This action stems from Plaintiff Kenneth Talton's medical treatment (or alleged lack thereof) while an inmate at the Peach County Jail. Talton essentially alleges that Deese was deliberately indifferent to the pain and suffering from his hernia in violation of his Fourteenth Amendment rights. [Doc. 1, ¶¶ 30—37]. However, Talton fails to show that Deese knew of his ailment, had supervisory liability over those that treated Talton, and that Talton was treated with constitutional deliberate indifference. Upon a review of the record and applicable law, the Court **GRANTS** Defendant's Motion.

## BACKGROUND

Kenneth Talton was an inmate at the Peach County Jail between October 2017 and June 2018. [Doc. 18-2, Deese Aff., ¶ 6]. On March 11, 2018, Talton complained of "groin pain" at sick call and was scheduled to have an appointment with the jail's nurse on March 13, 2018. [Doc. 30, p. 53]; [Doc. 20-1, Holtzclaw Depo., pp. 14:10—18, 22:14—18]. During sick call, Talton mentioned he believed he had a hernia to Jody Holtzclaw, a member of the jail's medical team.[1] [Doc 20-2, Talton Depo., p. 40:15—22]; [Doc. 20-1, Holtzclaw Depo, p. 15:19--25].

On March 13, 2018, Talton was examined by Nurse Alice Brehm, who testified that Talton complained of a "knot" in his right inguinal area that "bulges out at times and is approximately quarter sized." [Doc. 30, pp. 25—26]. Brehm examined Talton and charted that his pain as "intermittent" and coming on gradually. [*Id.*, p. 26]; [Doc. 20-1, Holtzclaw Depo., 25:12—27:6]. She observed that his vital signs were normal, bowel

---

[1] Plaintiff asserts that Holtzclaw knew Talton was suffering from a hernia that required urgent care and points to a deleted appointment entry as evidence. [Doc. 26, p. 4]. On a computer form submitted by Holtzclaw on March 10, 2018—three days before Talton was examined by the nurse—an appointment entry stated Plaintiff's ailment was the highest degree, a 1 out of 5 on the pain scale, and Talton "must see the MD for this issue." [Doc. 30-1, p. 1]. The appointment entry was marked as deleted. [*Id.*]. Holtzclaw elaborated on this entry in his deposition, stating that the entry was erroneous and that the proper procedure at the jail was to use a paper list, not a computer entry. [Doc. 20-1 Holtzclaw Depo., pp. 16:4—10, 22:14—18]. Holtzclaw also states that the pain scale is generated by the computer system to determine the urgency needed to examine the patient based on the inputted symptoms, with the higher the pain scale, the more quickly the patient should be seen. [*Id.*, pp. 16:11—17:13]. Holtzclaw further explains that when he said Talton needed to be seen by the M.D., he was referring to someone like Nurse Brehm. [*Id.*, 4—9]. Accordingly, the deleted entry shows that the medical staff was aware of Talton's symptoms and that he needed to be examined (as he was on March 13, 2018).

sounds were within normal limits, his bowel movements were normal, and he had no rebound tenderness or abdominal guarding. [Doc. 30, pp. 26, 57].

Brehm claims she was unable to palpate the lump. [*Id.*]. Plaintiff admits she stated she "didn't see [a] hernia," but denies that Brehm ever touched his body to palpate. [Doc. 20-2, Talton Depo., pp. 42: 7—9, 14—25, 39:4—10]. The nurse gave Talton Tylenol twice per day for three days for pain. [Doc. 30, p. 26]. The nurse instructed Talton to perform no heavy lifting or strenuous exercise, to avoid straining with bowel movement, and to support the area when coughing. [*Id.*]. The nurse also instructed Talton to "return to sick call if condition persists/worsens." [*Id.*, p. 27].

Talton remained incarcerated for another three months. [Doc. 18-2, Deese Aff., ¶ 6]. Importantly, Talton never filed another request for medical attention related to his hernia or to any other condition. [Doc. 20-2, Talton Depo, p. 43:9—11].

Defendant's medical expert claims, and Plaintiff agrees, that an "easily reducible" or non-palpable inguinal hernia does not require evaluation by a physician for surgery. [Doc. 18-9, Procter Aff., ¶ 6]; [Doc. 18-10, ¶¶ 42—43]; [Doc. 26-3, ¶¶ 42—43]. The parties agree that there is no indication Talton's hernia ever became "strangulated" or "incarcerated" while he was an inmate at Peach County. [Doc. 18-9, Procter Aff., ¶ 9]; [*Id.*, ¶ 9]; [Doc. 18-10, ¶ 44]; [Doc. 26-3, ¶ 44]. Accordingly, the expert states that until a hernia becomes incarcerated or strangulated, conservative, non-surgical treatment is

3

appropriate. [Doc. 18-9, Procter Aff., ¶¶ 10—11]; [Doc. 18-10, ¶ 45]; [Doc. 26-3, ¶ 45 (denying as stated because Plaintiff denies receiving even conservative treatment)].

Talton states he filed a form requesting action from non-medical staff after Brehm declined to treat his hernia to his satisfaction. [Doc. 20-2, Talton Depo., pp. 61:7—22, 62:9—19, 65:1—7]. However, there is no evidence that Deese received this grievance or was aware of it. [Doc. 18-2, Deese Aff., ¶ 9]. Further, Talton never spoke with Deese about his hernia [*Id.*, ¶¶ 7—9]; [Doc. 20-2, Talton Depo., p. 40:5—10] and never complained directly to Deese about his medical care. [Doc. 18-2, Deese Aff., ¶¶ 7--10]; [Doc. 20-2, Talton Depo., p. 40:5—10]. However, Plaintiff asserts he tried to alert Deese, but his request to meet with him or another official on the matter went unanswered. [*Id.*, pp. 61:21—62:1, 62:9—19, 65:4—7]. Talton was released in June 2018. [Doc. 18-2, Deese Aff., ¶ 6].

On September 17, 2018, Talton had an appointment with a nurse practitioner at Peach Regional Medical Center concerning his hernia. [Doc. 20-2, Talton Depo., p. 51:7—9]. The nurse practitioner told him the Center did not operate on hernias and referred him to a surgery center. [*Id.*, p. 49:24—25]. Talton waited another two months to seek a surgical consult at the Medical Center of Central Georgia ("MCGC") about his hernia. Talton claims he delayed medical treatment because he was unable to afford the surgery. [Doc. 26-2, Talton Aff., ¶ 6]. On November 14, 2018, Talton told MCCG that he had experienced hernia pain for "3-4 months." [Doc. 30-2, p. 5].

4

Talton elected to undergo surgery for his hernia on November 27, 2018. [*Id.*, pp. 9—11]. However, he also testified that the surgery did not relieve his pain very much. [Doc. 20-2, Talton Depo., pp. 57:21—58:5, 58:23—59:9].

Deese has served as the Sheriff of Peach County for fourteen years. [Doc. 18-2, Deese Aff., ¶ 2]. Deese adopted written policies for the jail that pertained to various aspects of officer conduct. [*Id.*, ¶ 14]. Deese is admittedly hands-off with handling the medical needs of the inmates and does not interfere with medical decisions. [Doc. 26-1, Deese Depo., pp. 14:12—15:19].

The parties agree that Deese is not himself a medical provider [Doc. 18-2, Deese Aff., ¶ 5]; [Doc. 26-3, ¶ 37]; Deese did not have any personal involvement in Plaintiff's medical care [Doc. 18-2, Deese Aff., ¶ 7]; [Doc. 20-2, Talton Depo., p. 63:7—10]; and he was not aware of Talton's hernia until this lawsuit was filed. [Doc. 18-2, Deese Aff., ¶ 10]; [Doc. 26-3, ¶ 39].

Deese states that no formal policy exists that denies inmates medical care, including treatment for hernias. [Doc. 18-8, pp. 2—3]; [Doc. 18-2, Deese Aff., ¶¶ 15—17]; *see also* [Doc. 20-2, Talton Depo., p. 41:14—21]. However, Talton claims he was told by Brehm that "they don't treat hernias there at the Peach County [Law Enforcement Center]." [*Id.*, pp. 37:12—13, 41:2—7]. Talton says he didn't recall if he was told that was an official policy or if those instructions came from Deese. [*Id.*, p. 41:14—21]. However,

5

Talton took Brehm's statement to mean that if he did have a hernia, the jail would not treat it.

Based on these events, Talton sued Deese in his individual capacity asserting that Deese acted with deliberate indifference to his hernia pain. [Doc. 1]. Plaintiff's claims against all other defendants have been dismissed.

## DISCUSSION

### A. Motion for Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmovant and a fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering this motion, "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255. However, the Court need not draw "all possible inferences" in favor of the nonmovant. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011).

The movant "bears the initial burden of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS*

*Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant "to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones*, 683 F.3d at 1292 (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)).

B.  <u>Analysis</u>

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

The Eighth Amendment prohibits indifference to an inmate's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees" like Talton. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1268 (11th Cir. 2005)). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." *Goebert,* 510 F.3d at 1326 (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005))

In *Estelle*, the Supreme Court recognized that the Constitution requires the

government to provide medical care to inmates, because the failure to do so "may actually produce physical 'torture or a lingering death' " or, "[i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." *McElligot v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (citing *Estelle*, 429 U.S. at 103). Still, "deliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997); *see also Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

"To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 F. App'x 456, 458 (11th Cir. 2010) (citing M*ann v. Taser Int'l, Inc*., 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

### 1. <u>Deese's Lack of Subjective Knowledge of Deliberate Indifference</u>

The Court first examines whether Deese was deliberately indifferent to Plaintiff's symptoms, irrespective of whether the hernia amounted to a serious medical need. In order to establish Deese was deliberately indifference to Plaintiff's need, Plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Lee*, 405 F. App'x at 458 (citing *Townsend v. Jefferson Cty*., 601 F.3d 1152, 1158 (11th Cir. 2010)).

"Subjective knowledge" requires that the official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also draw the inference." *Collins v. Bates*, No. 17-14559-G, 2018 WL 5090845, at *5 (11th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to establish a constitutional violation. *Collins*, 2018 WL 5090845, at *5 (citing *Farmer*, 511 U.S. at 837).

In this case, the undisputed factual record shows that Deese was not aware of Plaintiff's diagnosis until Plaintiff sued him. [Doc. 18-2, Deese Aff., ¶ 10]; [Doc. 26-3, ¶ 39]. Plaintiff presented no evidence that Deese was either objectively or subjectively aware of a serious risk of harm to his health. *Collins,* 2018 WL 5090845, at *7; *Farmer*, 511 U.S. at 837; *Goebert*, 510 F.3d at 1326.

Plaintiff contends that Deese is liable—despite having no subjective knowledge—for completely ignoring all the inmates' medical needs. [Doc. 26, pp. 1—4]. Plaintiff's cite to *McElligot* and *Howell*, which state "an official does not insulate his potential liability for deliberately indifferent actions by instituting a policy of indifference." [Doc. 26, p. 1 (citing *McElligot,* 182 F.3d at 1258 n. 7 and *Howell v. Evans*, 922 F.2d 712, 733 (11th Cir. 1991))]. But, those cases are different.

In *McElligot*, the official argued he was insulated from liability because of decisions from his nurses made without his knowledge. *McElligot,* 182 F.3d at 1258 n. 7.

9

However, there was still sufficient evidence that the official was nonetheless aware of a significant risk of harm to the plaintiff, yet did next to nothing to alleviate his suffering. *Id.* at 1251—54, 1257—58. The policy of indifference in *McElligot* allowed for delays in treatment due to screening by the nursing staff despite the official knowing immediate action was required. *Id.* at 1258. Additionally, in *Howell*, the Court stated that "[the official's] policy to seek proper treatment only when recommended by the medical personnel does not lessen his duty." *Howell*, 922 F.2d at 733. Thus, *McElligot* and *Howell* hold that an official cannot insulate himself by following a policy if otherwise liable for deliberately ignoring a serious medical need.

Yet, in this case, Deese isn't trying to insulate himself with a policy of indifference to Plaintiff's ailment because Deese contends that he wasn't even aware of the affliction. Further, the parties agree that Deese had no knowledge of Plaintiff's symptoms and did not manage the medical staff's operations. *See* [Doc. 26, p. 1 (Plaintiff argues Deese "delegated the medical decisions completely to the medical staff")]. Accordingly, this is not the sort of "policy of indifference" that was described in *McElligot.* In this case, the issue is not whether Deese was attempting to ignore his constitutional duties by hiding behind a policy of indifference, but rather whether he was deliberately indifferent at all to Talton's symptoms. As outlined above, there is insufficient evidence in the summary judgment record to show Deese was subjectively aware of Talton's ailment. Accordingly, the Court turns to Deese's liability as a

supervisory official and whether Deese had a duty to be more involved in the management of the medical team.

### 2. Deese's Liability as a Supervisory Official

An injured inmate could hold a sheriff liable as a supervisory officer. However, section 1983 requires proof of a causal link between a defendant's acts and the alleged constitutional deprivation. *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*. *Warden*, 590 F. App'x at 874 (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)).

A supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity. *Warden*, 590 F. App'x at 874 (citing *Keating*, 598 F.3d at 762). As noted above, Deese was not aware of Talton's symptoms and did not personally participate in the alleged constitutional violation. Accordingly, there must be a causal connection tying Deese's acts with Talton's alleged suffering.

A causal connection can be established from "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "The deprivations

that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Harrison*, 746 F.3d at 1298 (citing *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Alternatively, a causal connection can be established from either "a supervisor's custom or policy . . . result[ing] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Harrison,* 746 F.3d at 1298 (citing *Cottone,* 326 F.3d at 1360). In other words, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Harrison,* 746 F.3d at 1298—99 (citing *Cottone*, 326 F.3d at 1360).

Talton alleges a policy or custom instituted by Deese existed because he was told by Brehm that "they don't treat hernias there at the Peach County [Law Enforcement Center]." [2] [Doc. 20-2, Talton Depo., p. 38:21—23, 41:2—11]. However, besides this statement, Plaintiff does not submit evidence of an official policy prohibiting hernia treatments. Instead, Plaintiff attempts to support his claim by relying on Holtzclaw and

---

[2] Defendant contends that Plaintiff's statement that Brehm told him that the jail doesn't treat hernias is inadmissible for determining whether the jail has a policy of denying treating hernias. [Doc. 34, p. 8]. However, Plaintiff correctly contends that the evidence is admissible under Federal Rule of Evidence 801(d)(2)(D), "the statement is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." [Doc. 26-3, ¶ 31]; *See Chatham v. Adcock,* 334 F. App'x 281, 286 n. 11 (11th Cir. 2009).

Deese being unable to remember the last time an inmate was sent to the hospital for a hernia. [Doc. 20-1, Holtzclaw Depo., p. 28:3—5]; [Doc. 26-1, Deese Depo., p. 9:1—3]. However, the assertion that a policy or custom existed to deny Talton treatment is undermined by the fact Talton was treated for his hernia pain, including being given instructions to reduce activity and Tylenol for the pain.

Further, Plaintiff does not provide evidence that the Sheriff was the one who adopted the alleged policy preventing the medical staff from treating hernias. On the contrary, Plaintiff asserts that Deese was too hands-off when dealing with the medical team. *See* [Doc. 26-3, ¶ 30 (collecting Deese's deposition testimony stating he does not interfere with medical decisions)].

Accordingly, Plaintiff fails to show that Deese adopted a custom or policy that resulted in deliberate indifference to Plaintiff's hernia. Nor do the facts in the record suggest that the Sheriff directed the medical staff to act unlawfully. Moreover, Plaintiff does not offer any evidence of a history of widespread abuse that could put Deese on notice to a deprivation of medical treatment.

Therefore, Deese may be granted summary judgment because he neither had subjective knowledge of Talton's hernia pain nor supervisory liability over jail officials who were aware of the symptoms.

### 3. Talton's Medical Treatment for his Hernia

The Court next examines whether Plaintiff had a serious medical need that was

not properly treated. Assuming Deese had subjective knowledge or supervisory liability, the record also does not demonstrate Plaintiff received medical treatment so lacking that it rises to the level of deliberate indifference.

"A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Lee,* 405 F. App'x at 458 (citing *Pourmoghani–Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010)).

A medical need may be considered serious if a delay in treating it makes it worse. *Jackson v. Jackson*, 456 F. App'x 813, 814 (11th Cir. 2012) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson,* 456 F.2d at 814 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

Deliberate indifference must be more than an inadvertent failure to provide adequate medical care, negligence in diagnosis or treatment, or medical malpractice. *Sifford v. Ford,* 701 F.App'x 794, 795 (11th Cir. 2017) (citing *Estelle*, 429 U.S. at 105–06). Where an inmate receives medical treatment but desires different modes of treatment, the care provided does not amount to deliberate indifference. *Ford,* 701 F. App'x at 796 (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)). A difference in medical opinion does not establish deliberate indifference. *Ford,* 701 F. App'x at 796

(citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Whether governmental actors should have employed "additional diagnostic techniques or forms of treatment" is a "classic example of a matter for medical judgment" and, therefore, is not an appropriate basis for liability for deliberate indifference. *Ford*, 701 F. App'x at 796 (citing *Estelle*, 429 U.S. at 107 (holding that whether to order an x-ray or additional diagnostic treatment is a matter for medical judgment)).

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Smith v Franklin Cty.*, 762 F. App'x 885, 889 (11th Cir. 2019) (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011)). Additionally, an officer "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Smith*, 762 F. App'x at 889 (citing *Bingham*, 654 F.3d at 1176. However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Smith*, 762 F. App'x at 889 (citing *Harris*, 941 F.2d at 1505); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (deliberate indifference is about "obduracy and wantonness, not inadvertence or error in good faith").

The record does not show the medical staff provided grossly inadequate care, took an easier course of treatment with deliberate indifference to the plaintiff's

suffering, or the treatment was so cursory as to amount to no treatment at all.

First, courts in the Eleventh Circuit have routinely supported delaying operating on a hernia if other treatment is provided. *See Johnson v. Iliff,* No. 16-0037-KD-MU, 2018 WL 1190175, at *9 (S.D. Ala. 2018) (collecting cases in this circuit supporting delaying or denying hernia surgery while a hernia remains reducible, if other medical treatment or care is provided). The parties agree that "there is no indication Mr. Talton's hernia ever became 'strangulated' or 'incarcerated' while he was an inmate at Peach County." [Doc. 18-10, ¶ 44]; [Doc. 26-3, ¶ 44]; [Doc. 18-9 Proctor Aff., ¶ 7]. The parties also agree that "unless and until a hernia becomes incarcerated or strangulated, conservative, non-surgical treatment is appropriate." [Doc. 18-10, ¶ 45]; [Doc. 26-3, ¶ 45 (denying as stated because Talton argues he wasn't given conservative treatment)]; [Doc. 18-9 Proctor Aff., ¶ 8]. Thus, the hernia did not need surgical removal while he was in jail.

Alternatively, Plaintiff argues that he did not receive the proper treatment for his hernia because Plaintiff received almost no treatment for his pain or truss to support his hernia. [Doc. 26-3, ¶ 45]; [Doc. 26, p. 14]; [Doc. 26-2, Talton Aff., ¶ 3]. As an initial matter, the parties dispute how much pain Talton was in, with Deese citing to Talton's statements to medical staff in November 2018, where Talton stated he only experienced hernia pain for the last three to four months; thus, after Talton left jail. [Doc. 30-2, p. 5].

However, even if Talton was experiencing hernia pain while in jail, Talton has not shown Brehm knew of his continued pain or acted with deliberate indifference in

treating him. Brehm did not observe a hernia during her examination of Talton. Still, Brehm instructed Talton to avoid heavy lifting, provided him pain medication, and told him to come back if the pain continued. These types of decisions are not the makings of a constitutional deliberate-indifference claim. Instead, they are medical decisions as to diagnosis and treatment. Talton was told to return if the pain persisted but declined to do so, knowing that at a minimum Brehm could supply Tylenol for sustained pain. Still, Talton did not return to Brehm to let her know of continued discomfort. The "deliberate indifference test does not transform jailers into mind readers or medical experts." *Weaver v. Tillman*, No. 05-0449-WS-B, 2006 WL 1889565, at *9 (S.D. Ala. 2016) (citing *Cagle v. Sutherland*, 334 F.3d 980, 989 (11th Cir. 2003) ("A prison custodian is not the guarantor of a prisoner's safety.") Accordingly, Talton fails to show that the care he received at the Peach County Jail could amount to deliberate indifference.

Thus, the Court also finds summary judgment appropriate because Deese was not treated with deliberate indifference to a serious medical need.

### 4. <u>**Qualified Immunity Analysis**</u>

Qualified immunity shields "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The parties agree Deese's actions fell within the scope of his discretionary

authority. Thus, Talton has the burden to make two showings to overcome Deese's qualified-immunity: (1) that the relevant facts must set forth a violation of a constitutional right, and (2) that the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct. *Hughes*, 920 F.3d at 732 (citing *Pearson*, 555 U.S. at 232). As explained above, Plaintiff has not established a constitutional deliberate-indifference violation. Even assuming that Plaintiff had any constitutional rights under these circumstances that were violated, he fails to point to any case law that demonstrates that right was clearly established at the time of violation in this circuit or state. Additionally, the Court cannot say that the Sheriff's conduct so obviously violated the Constitution given the Sheriff's lack of knowledge of Plaintiff's symptoms and the medical treatment Plaintiff did receive for his condition.

## **CONCLUSION**

For the reasons above, the Court **GRANTS** Deese's Motion for Summary Judgment [Doc. 18]. As there are no remaining defendants, the Court **DIRECTS** the Clerk to close this case.

**SO ORDERED**, this 4th day of March, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
